IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-00723-MSK

SAMUEL J. POWELL,

    Applicant,

v.

CHARLES DANIELS, Warden,

    Respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This matter comes before the Court pursuant to Mr. Powell's (Petitioner's) Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (# 3). Respondent filed a Response (# 12). Petitioner did not reply. Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 2241 and 1331.

### II. Background

Petitioner currently is in the custody of the United States Bureau of Prisons (BOP) at the United States Penitentiary in Florence, Colorado. On January 1, 25, 2008, Petitioner was involved in a prison riot at the United States Penitentiary in Beaumont, Texas. Petitioner was placed in the Special Housing Unit, along with other involved prisoners, for two months, or until March 13, 2008, pending an investigation by the BOP Special Investigative Services (SIS). Subsequent to the investigation, on March 14, 2008, Petitioner was charged, in Incident Report

No. 1710560 with fighting in violation of Disciplinary Code No. 201. Resp. Ex. A-1 [# 12-1] at Attach B.

The charge against Petitioner was heard by the Disciplinary Hearing Officer (DHO) on March 20, 2008. Resp. Ex. A-1 at 17. Petitioner did not request a staff representative, waived his right to call witnesses, and stated at the hearing that he was not fighting but was attacked by other inmates. *Id.* at 17-18. The DHO found that Petitioner committed the act of fighting based on the written report given in the Incident Report and SIS report, which states that Petitioner joined a large group of inmates to fight another large group of inmates. *Id.* at 18. The report also states that Petitioner sustained a puncture wound to his back, a bump to his head, and lacerations to his arms, supporting his participation in an altercation. *Id.* Although the DHO considered Petitioner's statement that he did not participate in the fight but was attacked, the DHO found the written report to be more credible for two reasons - when Petitioner was interviewed about the fight he stated he had nothing to say and because it was unlikely that he did not defend himself if attacked. Defensive fighting constituted fighting. The DHO concluded that Petitioner failed to provide any credible evidence to support his statement that he did not participate in the fight. *Id.* Petitioner was sanctioned with the disallowance of twenty-seven days of good time and a disciplinary transfer. *Id.*

Petitioner contends that his disciplinary conviction was obtained in violation of his due process rights. Specifically, Petitioner asserts the DHO only relied on a written statement for his decision that he was guilty of fighting and denied consideration of any video surveillance tape that would have shown he was attacked and assaulted during the prison riot, while he was trying to leave the prison yard. Pet. at 7 and 9. Petitioner further contends that his due process rights were violated because he was not served with a written notice within twenty-four hours of the

incident and a Unit Disciplinary Committee hearing was not held within seventy-two hours of the incident. Pet. at 7.

## II. Analysis

### A. Standard of Review

In considering Petitioner's filings, the Court is mindful of his pro se status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Pro se status does not relieve Petitioner of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Petitioner according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993); *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994).

### B. Review of Disciplinary Proceeding

As a federal prisoner, Petitioner has a constitutionally protected liberty interest in his earned good-conduct time. *See Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987). Therefore, he was entitled to due process at the disciplinary hearing in question. However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Rather adequate due process at a prison disciplinary hearing requires only that a prisoner be provided with written notice of the charges against him no less than twenty-four hours in advance of the disciplinary hearing, an opportunity to call witnesses and present documentary evidence in his defense if doing so would not be unduly hazardous to institutional

safety or correctional goals, and a written statement by the factfinders of the reasons for the decision and the evidence on which they relied. *See id*. at 563-66; *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990). There also must be some evidence to support a disciplinary conviction. *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).

"Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *see Mitchell*, 80 F.3d at 1445. The disciplinary decision will be upheld even if the evidence supporting the decision is "meager." *Mitchell*, 80 F.3d at 1445 (citing *Hill*, 472 U.S. at 457). Constitutionally adequate due process at a prison disciplinary hearing does not require that a petitioner be informed of every detail of the charges against him so that he can prepare what in his opinion is the best defense. It only requires that the petitioner be informed of the charges to enable him to marshal the facts and prepare a defense. *Wolff*, 418 U.S. at 564.

"[A] failure to adhere to administrative regulations does not equate to a constitutional violation." *See Hovater v. Robinson,* 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing *Davis v. Scherer,* 468 U.S. 183, 194 (1984)). A review of a petitioner's disciplinary proceeding is "limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary committee's findings." *Mitchell*, 80 F.3d at 1445; *e.g.*, *Diaz v. McGuire*, 154 F. App'x 81, 84-85 (10th Cir. 2005) (stating that prison regulations are not designed to confer rights on inmates, and the process which is due is measured by the due process clause), *cert. denied,* 546 U.S. 1221 (2006). Finally, prison regulations are "primarily

4

designed to guide correctional officials in the administration of a prison." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995).

### 1. Notice of Charges

Under *Wolff*, due process is provided to an inmate when he receives notice of the charges against him within twenty-four hours prior to a disciplinary hearing. Here, Petitioner received a written notice of the incident report, and the charges asserted against him, on March 14, 2008. Resp. Ex. A-1 at 10. His disciplinary hearing took place on March 20, 2008. *Id.* at 17. Petitioner had well over twenty-four hours between the date he was given a notice of the charges against him and the date the disciplinary hearing was held.

To the extent Petitioner attempts to assert a violation of his due process rights based on BOP staff's failure to follow BOP Program Statement (P.S.) 5270.08,[1] which Petitioner claims requires a written notice be provided within twenty-four hours of the incident, or a UDC hearing be conducted within seventy-two hours, his claim lacks merit. *Hovater,* 1 F.3d at 1068 n. 4. But even if a failure to follow a BOP program statement would give rise to a violation of Petitioner's due process rights, P.S. 5270.08 was followed in this case.

Under 28 C.F.R. § 541.11, BOP staff shall "advise each inmate in writing . . . of the disciplinary system within the institution and the time limits thereof." § 541.11(b). In both § 541.11 and P.S. 5270.08(Chap. 2), Table 2, titled "Time Limits In Disciplinary Process," sets forth the time limits for BOP staff to notify an inmate of a disciplinary infraction. The first two entries on the Time Limits Table, "Staff becomes aware of inmate's involvement in the incident" and "Staff gives inmate notice of the charges by delivering Incident Report," are separated by a

---

[1] Petitioner refers to P.S. 5270.07, which was rescinded on March 20, 2006. Petitioner's disciplinary infraction took place in 2008. Program Statement 5270.08 superseded P.S. 5270.07, but there is no substantive change in P.S. 5270.08.

time period described as "ordinarily maximum of 24 hours." However, a note to the table explains that "[t]hese time limits are subject to exceptions as provided in the rules." One of these exceptions is set forth in P.S. 5270.08(Chap. 5)(1)(b), and reads in part as follows: "Staff shall conduct the investigation promptly unless circumstances beyond the control of the investigator intervene," and "[i]t is suggested that the investigation be initiated and ordinarily completed within 24 [hours]" of an investigator being appointed. Different rules, however, apply "[w]hen it appears likely that the incident may be the subject of criminal prosecution." P.S. 5270.08(5)(1)(b)(1). In such circumstances, "the investigating officer shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or **other investigative agency** interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur." *Id.* Thus, the twenty-four hour period referenced in Table 2 is found to be inapplicable where the conduct in question is referred to an investigative agency.

Here, it is undisputed that the BOP referred the investigation of the prison riot to SIS, tolling the time period for delivery of the Incident Report. The SIS investigation was completed on March 13, 2008. Resp. Ex. A-1 at Attach B. Petitioner received a copy of the Incident Report on March 14, 2008. *Id.* Petitioner also received a UDC hearing on March 17, 2008, *Id.*, which is within the three-day work days allowed to hold the hearing, *see* Table 2, P.S. 5270.08. Chap. 2. Nothing in Petitioner's disciplinary proceeding violated the BOP rules regarding time limits under P.S. 5270.08. BOP staff was not aware of Petitioner's involvement with the fighting charge until the SIS completed an investigation of the prison riot and acted in a timely manner after being informed of the charges to notify Petitioner of the charges and to conduct a UDC hearing. Therefore, Petitioner's untimely notice of charges and holding of hearing claims lack

6

merit and will be denied.

### 2. Surveillance Tape Video

Petitioner asserts that the DHO denied his request to present a surveillance video tape that he claims would have shown he was attacked and assaulted during a prison riot. Pet. at 7. Petitioner further asserts that the DHO made his decision based solely on a written statement by a correctional officer, which violated his due process rights. Pet. at 2 and 7.

The Tenth Circuit has found an inmate's due process rights are violated when the DHO unjustifiedly refuses an inmate request to produce and review a video tape, *see Howard v. U. S. Bureau of Prisons*, 487 F.3d 808 (10th Cir. 2007). However the facts of *Howard* are distinguishable from those in this case. In *Howard*, the inmate requested review of the videotapes prior to the DHO hearing, expressly requested that the DHO review videotape at the hearing, the DHO declined to review the tapes, and the inmate raised the denial of the DHO's review of the videotape in his administrative appeal.

In contrast, the Petitioner is quoted as stating "...I didn't do nothing, look at the cameras" to the UCD committee, but there is no later request to the DHO to review videotapes, to continue the hearing to allow the Petitioner to review the videotapes. Resp. Ex. A-1 at Attach. E. At the DHO hearing, Petitioner did not ask for staff representation, he did not provide a written statement, and he did not request witnesses. Resp. Ex. A-1 at Attach. E. Petitioner was provided with a statement of his rights and was aware that he had a right to present documentary evidence. Resp. Ex. A-1 at 13. His only statement was that he was not fighting and was attacked by other inmates. *Id.* In his administrative appeal, the Petitioner states "Cameras don't lie an it's 4 in front of unit aa. All you have to do is look 4 yourself!" Pet. at 6. , but there is no challenge that he requested the opportunity to review or present videotape evidence and that such request was

7

denied.

It is somewhat unclear whether the Petitioner's statement to the UCD committee was a request to review videotapes, but even if it was, the Petitioner apparently abandoned that request when he appeared before the DHO.  Again, in his administrative appeal, the Petitioner suggests that the videotapes might have shown something, but he never claims that he was denied an express request to see the tapes or to have them considered.  In the absence of an explicit request that was denied, the Court finds no denial of due process with regard to any videotape evidence.

Evidence exists that could support the conclusion reached by the DHO. *Hill*, 472 U.S. at 455-56. The DHO stated his finding was based in part on the written account of Mr. Swain's investigation and the SIS report.  The SIS report stated that the Petitioner was part of a large group of inmates that fought another large group of inmates.  During the riot, the Petitioner suffered injuries that supported a finding that he was involved in the altercation.  According to Mr. Swain's report, the Petitioner never denied fighting, and instead stated "I got nothing to tell you".  [2]   The DHO found that even if the Petitioner did not initiate the fight, it was unlikely that he would not have fought back, and that there was no evidence to suggest that he was only an assault victim. Resp. Ex. A-1 at 18.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (# 3) is **DENIED**.  The Clerk of the Court shall enter judgment and close this case.

Dated this 18th day of April, 2011

---

[2] Although Petitioner asserted in his administrative remedy appeal, which is attached to the Petition, that he was not interviewed by Mr. Swain, this is inconsistent with his position before the DHO and in this matter.  In neither instance, did he contend that he was not interviewed by Mr. Swain.

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge